UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
GREENVILLE DIVISION

| | | |
|---|---|---|
| Robert Delgadillo,<br><br>Plaintiff,<br><br>v.<br><br>Officer Gray,<br><br>Defendant. | ) | C/A No. 6:25-cv-13237-BHH-WSB<br><br>**REPORT AND RECOMMENDATION** |

This matter is before the Court on Defendant's Motion for Summary Judgment. ECF No. 25. Plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, filed this action under 42 U.S.C. § 1983, alleging violations of his constitutional rights. Pursuant to 28 U.S.C. § 636(b)(1) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), the undersigned United States Magistrate Judge is authorized to review all pretrial matters in cases filed under § 1983 and submit findings and recommendations to the district court.

## BACKGROUND

Plaintiff commenced this action on October 31, 2025, by filing a Complaint on the standard form seeking relief pursuant to 42 U.S.C. § 1983. ECF No. 1. By Order dated November 5, 2025, Plaintiff was directed to bring the case into proper form. ECF No. 7 at 1-3. Plaintiff complied with that Order, and service of process was authorized on Defendant. ECF No. 12.

Plaintiff appears to allege that Defendant struck Plaintiff with Defendant's patrol car. The Complaint states, "black and gray sheriff's car swerved and hit me while I was riding my bike [Defendant] and other officers it's all on Taco Bell camera's video footage." ECF No. 1 at 4. Plaintiff claims that another car struck him again before his arrest. *Id.* After he was handcuffed, Defendant transported Plaintiff to jail, where he was evaluated by a nurse. *Id.* at 4-5. According

to Plaintiff, the nurse asked why Plaintiff was "not walking right[,]" to which "police admitted" to hitting him. *Id.* at 5. Plaintiff claims the nurse told the deputies to take him to the hospital, so the deputies carried Plaintiff back to the police car and drove him to the hospital for an evaluation. *Id.* at 4, 7. Throughout the Complaint, Plaintiff repeatedly claims that the incident and the deputies' admission to assaulting him are available on camera and video surveillance. *Id*. Plaintiff contends that the incident "jolted" his body, which resulted in injuries to his right knee, hip, spinal cord, and neck. *Id.* Plaintiff claims he experiences "non-stop" pain in his right knee, hip, back, and neck, and he wakes up at night from nightmares of the deputies swerving and hitting him. *Id.* For relief, Plaintiff seeks $300,000 and requests that the deputies pay his hospital bill. *Id.*

Defendant submitted nine affidavits with accompanying exhibits, body camera videos from Defendant and five other responding deputies, and five dashboard camera videos in support of his Motion for Summary Judgment. According to Defendant's affidavit and incident report, on March 20, 2025, dispatch notified Defendant and other deputies with the Greenville County Sheriff's Office that someone had witnessed a shoplifting incident at a Food Lion in Greenville, South Carolina. ECF Nos. 25-2, Gray Aff. ¶ 2; 25-3 at 3. When Defendant arrived at the scene, he spoke with a Food Lion loss prevention employee, who witnessed Plaintiff conceal four items and walk to the store exit without paying for the merchandise. ECF No. 25-2, Gray Aff. ¶ 3. The employee approached Plaintiff, who pointed a fixed blade knife at the employee, exited the store, and rode away on a bicycle. *Id.* ¶ 4. Defendant notified other deputies that Plaintiff fled from the scene on a bicycle and began searching for Plaintiff. *Id.* ¶¶ 5, 7. Defendant eventually located Plaintiff and notified Deputy Dustin Paulsson, who was close by at the time. *Id.* ¶ 8; ECF No. 25-3 at 4. Defendant and Paulsson parked, exited their cars, and followed Plaintiff into a parking lot near a Taco Bell. ECF Nos. 25-2, Gray Aff. ¶ 8; 25-3 at 4; 25-10, Paulsson Aff. ¶¶ 3-4; 25-11 at 3; 25-

17. According to Paulsson's body camera footage, Paulsson and Defendant advised Plaintiff to stop, but he refused and rode away on the bicycle. ECF Nos. 25-3, Gray Aff. ¶ 8; 25-3 at 4; 25-10, Paulsson Aff. ¶ 4; 25-11 at 3;25-17. Defendant and Paulsson returned to their respective patrol cars and searched for Plaintiff until another deputy informed them of Plaintiff's location. ECF Nos. 25-2, Gray Aff. ¶¶ 9-10; 25-10, Paulsson Aff. ¶¶ 4-5.

Meanwhile, Master Deputy Joshua Campbell found Plaintiff riding the bicycle, pursued him, and instructed him to stop fleeing through the PA system in his patrol car. ECF No. 25-4, Campbell Aff. ¶ 3. Campbell then parked, exited his car, and attempted to apprehend Plaintiff with assistance from Paulsson. *Id.* ¶ 4; ECF No. 25-10, Paulsson Aff. ¶ 6. As Campbell chased Plaintiff, Deputy Andrew Reese drove up to the scene in his patrol car. ECF No. 25-17. Dashboard camera footage from Reese's car shows that as Reese pulled up beside Plaintiff and stopped the car, Campbell wrapped his arms around Plaintiff and tackled him. *Id.* Shortly thereafter, Defendant arrived at the scene, parked and exited his patrol car, and witnessed Paulsson and Campbell's attempts to handcuff Plaintiff. *Id.*; ECF Nos. 25-2, Gray Aff. ¶ 11, 25-4, Campbell Aff. ¶ 5; 25-17. Defendant and the other deputies repeatedly instructed Plaintiff to put his hands behind his back, but Plaintiff refused to comply and continued reaching his arms out to the side. ECF Nos. 25-2, Gray Aff. ¶ 11; 25-11 at 4; 25-17. According to Defendant's affidavit and Paulsson's body camera video, Defendant held Plaintiff's feet while Deputy Patrick Farrell, Paulsson, and Reese placed Plaintiff in handcuffs. ECF Nos. 25-2, Gray Aff. ¶ 12; 25-3 at 4; 25-17. After Plaintiff was restrained, Paulsson and Farrell helped Plaintiff stand, searched him, and placed him in Defendant's patrol car. ECF Nos. 25-2, Gray Aff. ¶¶ 12, 14; 25-3 at 4. Deputy Mike Savakis, an Emergency Medical Technician, attempted to evaluate Plaintiff while he was sitting in the patrol car, but Plaintiff declined the evaluation. ECF No. 25-2, Gray Aff. ¶ 15. Defendant then escorted

Plaintiff to Deputy Brian Gillespie's patrol car for transport to the Greenville County Detention Center. *Id.* ¶ 16.

The body camera videos of both Gillespie and Defendant show that upon arrival at the Detention Center, Plaintiff claimed he could not walk because his feet were hurting, so Defendant and Gillespie carried him inside the building. ECF Nos. 25-2, Gray Aff. ¶ 18; 25-3 at 4; 25-6, Gillespie Aff. ¶ 6; 25-17. A nurse evaluated Plaintiff and instructed Defendant and Gillespie to transport him to Greenville Memorial Hospital ("GMH") based on Plaintiff's complaints related to an unspecified foot injury. ECF Nos. 25-2, Gray Aff. ¶ 18; 25-3 at 4. Defendant and Gillespie helped Plaintiff walk back to the patrol car and placed him in the backseat, where Plaintiff threatened Defendant and kicked him in the chest. *Id.* ¶ 19; ECF Nos. 25-3 at 4; 25-6, Gillespie Aff. ¶ 7; 25-7 at 5; 25-17. Defendant then transported Plaintiff to GMH, where Reese assisted with escorting Plaintiff to a hospital room. ECF Nos. 25-3 at 4; 25-17. GMH medical personnel performed an x-ray of Plaintiff's chest and CT scans of his cervical spine, head, chest, abdomen, and pelvis. ECF No. 25-19 at 2. Plaintiff was discharged and instructed to take over-the-counter medication for any pain or discomfort. *Id.* at 3. Plaintiff later pled guilty to shoplifting, resisting arrest, first-degree assault and battery, and possession of less than one gram of methamphetamine or cocaine base, second offense.[1]

---

[1] *See State v. Delgadillo*, Nos. 2025A2330202613; 2025A2330202614; 2025A2330202615; 2025A2330202619, available at https://www2.greenvillecounty.org/SCJD/PublicIndex (Greenville County Public Index website). The Court takes judicial notice of state court proceedings showing Plaintiff pled guilty to these offenses. *See generally Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("[F]ederal courts, in appropriate circumstances, may take notice of proceedings in other courts, both within and without the federal judicial system, if those proceedings have a direct relation to matters at issue[.]").

On March 5, 2026, Defendant filed a Motion for Summary Judgment. ECF No. 25. On March 6, 2026, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the Court advised Plaintiff of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendant's Motion. ECF No. 26. Plaintiff filed a Response to Defendant's Motion on March 16, 2026. ECF No. 30. Accordingly, Defendant's Motion is now ripe for review.

## APPLICABLE LAW

### Liberal Construction of *Pro Se* Pleadings

Plaintiff brought this action *pro se*, which requires the Court to liberally construe his pleadings. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *Haines v. Kerner*, 404 U.S. 519, 520 (1972); *Loe v. Armistead*, 582 F.2d 1291, 1295 (4th Cir. 1978); *Gordon v. Leeke*, 574 F.2d 1147, 1151 (4th Cir. 1978). *Pro se* pleadings are held to a less stringent standard than those drafted by attorneys. *Haines*, 404 U.S. at 520. The mandated liberal construction afforded to *pro se* pleadings means that if the Court can reasonably read the pleadings to state a valid claim on which Plaintiff could prevail, it should do so, but a district court may not rewrite a petition to include claims that were never presented, *Barnett v. Hargett*, 174 F.3d 1128, 1133 (10th Cir. 1999), construct Plaintiff's legal arguments for him, *Small v. Endicott*, 998 F.2d 411, 417–18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the Court, *Beaudett v. City of Hampton*, 775 F.2d 1274, 1278 (4th Cir. 1985). The Court's duty to liberally construe a *pro se* litigant's complaint does not require the Court "to remove [it's] heavy robe ... and take on the role of the litigant's attorney." *Jackson v. Dameron*, 171 F. 4th 641, 652 (4th Cir. 2026). The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts

which set forth a claim cognizable in a federal district court. *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

**Summary Judgment Standard**

Federal Rule of Civil Procedure 56 states, as to a party who has moved for summary judgment, that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, a court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of a plaintiff's position is insufficient to withstand a defendant's summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly

preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

**Claims Under § 1983**

Plaintiff's Complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012) (quoting 42 U.S.C. § 1983). To state a claim under § 1983, a plaintiff must allege two elements: (1) that a right secured by the Constitution or laws of the United States was violated and (2) that the alleged violation was committed by a person acting under the color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

## DISCUSSION

**Official Capacity Claims**

Defendant argues the Eleventh Amendment bars this action against him in his official capacity. ECF No. 25-1 at 11-13. Defendant further argues that he is not "person" for the purposes of liability in his official capacity under § 1983. *Id.* at 13-14. To the extent Plaintiff is suing Defendant is in official capacity, the undersigned agrees.

The Eleventh Amendment prohibits federal courts from entertaining an action against a state. *See e.g.*, *Alabama v. Pugh*, 438 U.S. 781, 782 (1978) (citations omitted). Further, Eleventh Amendment immunity "extends to 'arm[s] of the State,' including state agencies and state officers acting in their official capacity," *Cromer v. Brown*, 88 F.3d 1315, 1332 (4th Cir. 1996) (alteration in original) (internal citations omitted), because "a suit against a state official in his or her official

capacity is not a suit against the official but rather is a suit against the official's office … [and] is no different from a suit against the State itself." *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).

"In South Carolina, a sheriff's office is an agency of the state." *Smalls v. Charleston Cnty. Sheriff's Off.*, C/A No. 2:21-cv-03713-DCN-MHC, 2022 WL 22588036, at *2 (D.S.C. Jan. 7, 2022), *R&R adopted by* C/A No. 2022 WL 22588031 (D.S.C. Jan. 25, 2022). As such, South Carolina sheriff's offices and sheriff's deputies are entitled to Eleventh Amendment immunity and may only be sued in their individual capacities. *Comer*, 88 F.3d at 1332 (holding a Greenville County Sheriff immune from suit under § 1983); *McCall v. Williams*, 52 F.Supp.2d 611, 615 (D.S.C. 1999) ("As an arm of the State, a deputy sheriff is entitled to Eleventh Amendment immunity from civil damages suits in federal court, unless the state expressly waived this immunity."). Additionally, as an arm of the state, sheriff's deputies, in their official capacity, are not "persons" within the meaning of § 1983. *See Will*, 491 U.S. at 71 (""[N]either a State nor its officials acting in their official capacities are 'persons' under § 1983."); *Wiggins v. Wallace*, C/A No. CV 1:18-1448-TMC-SVH, 2019 WL 8755121, at *5 (D.S.C. Dec. 30, 2019) ("Because Defendants in this case are employees of the Marion County Sheriff's Office, when acting in their official capacities, they are considered an arm of the State and not a "person" within the meaning of § 1983."), *R&R adopted by* C/A No. 1:18-cv-1448-SAL, 2020 WL 1181305 (D.S.C. Mar. 11, 2020).

As an employee of the Greenville County Sheriff's Department, Defendant is an arm of the State of South Carolina and therefore entitled to Eleventh Amendment Immunity. Additionally, Defendant, in his official capacity, is not a "person" subject to suit under § 1983. Therefore,

Defendant's Motion for Summary Judgment on Plaintiff's claims against Defendant in his official capacity should be granted.

**Excessive Force**

Plaintiff's individual capacity claims are addressed below. Plaintiff asserts that Defendant used excessive force in Plaintiff's arrest. Because the alleged use of excessive force occurred during Plaintiff's arrest, Plaintiff's claims are governed by the Fourth Amendment. *See Graham v. Connor*, 490 U.S. 386, 395 (1989) (holding that "*all* claims that law enforcement officers have used excessive force – deadly or not – in the course of an arrest, investigatory stop, or other 'seizure' of a free citizen should be analyzed under the Fourth Amendment and its 'reasonableness' standard, rather than under a 'substantive due process' approach.") (emphasis in original).

The Fourth Amendment "prohibits police officers from using force that is 'excessive' or not 'reasonable' in the course of making an arrest." *Meyers v. Balt. Cnty., Md.*, 713 F.3d 723, 732 (4th Cir. 2013) (quoting *Graham*, 490 U.S. at 395). "Claims that police officers used excessive force to seize a citizen ... are cognizable under § 1983." *Hembree v. Branch*, C/A No. 3:17-cv-485-FDW, 2018 WL 4283060, at *3 (W.D.N.C. Sept. 7, 2018) (citing *Graham*, 490 U.S. 386). When determining whether an officer used excessive force during an arrest, courts examine the facts and circumstances of each case, including (1) "the severity of the crime at issue," (2) "whether the suspect poses an immediate threat to the safety of the officers or others," and (3) "whether the suspect is actively resisting arrest or attempting to evade arrest by flight." *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 6 (2021) (quoting *Graham*, 490 U.S. at 396). Courts also consider the "extent of the plaintiff's injuries." *Nichols v. Bumgarner*, 173 F.4th 511, 520 (4th Cir. 2026) (quoting *Nazario v. Gutierrez*, 103 F.4th 213, 234 (4th Cir. 2024)). Police officers may "exert some physical force to effectuate the order," and, unless the force is excessive, they do not violate

the Fourth Amendment in doing so. *Coleman v. Calvert Cnty.*, C/A No. GJH-15-cv-920, 2016 WL 5335477, at *4 (D. Md. Sept. 22, 2016). Additionally, "[a]s a general rule, officers conducting an arrest or investigatory stop are authorized to take such steps as are reasonably necessary to protect their personal safety and to maintain the status quo during the course of the arrest and/or stop." *Newman v. Green*, 198 F. Supp. 2d 664, 668 (D. Md. 2002) (citing *United States v. Leshuk*, 65 F.3d 1105, 1109 (4th Cir. 1995)). "A claim of excessive force by police during an arrest is properly analyzed under the Fourth Amendment by a determination of whether the officer's conduct was 'objectively reasonable.'" *El v. Wean*, C/A No. 2:16-cv-01152-DCN, 2017 WL 3910864, at *3 (D.S.C. Sept. 7, 2017) (citations omitted).

***Use of Patrol Car***

Plaintiff alleges that Defendant "swerved" with his patrol car and struck Plaintiff while he was riding his bicycle. ECF Nos. 1 at 4-5. Defendant argues that the undisputed evidence demonstrates that Defendant's patrol car never struck Plaintiff. ECF No. 25-1 at 8.

Aside from Plaintiff's bare allegations that Defendant struck Plaintiff with Defendant's patrol car, Plaintiff has not presented any evidence to support this claim of excessive force. To the contrary, Defendant presented Paulsson's body camera footage, which shows that Defendant and Paulsson had parked and exited their cars before pursuing Plaintiff through the parking lot near a Taco Bell. *See Scott v. Harris,* 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for the purposes of ruling on a motion for summary judgment."); *Matherly v. Andrews*, 859 F.3d 264, 280 (4th Cir. 2017) ("Conclusory or speculative allegations do not suffice to oppose a properly supported motion for summary judgment, nor does a mere scintilla of evidence.") (citations and internal quotation marks omitted);

*Pronin v. Johnson*, 628 F. App'x 160, 161 (4th Cir. 2015) ("[A] party cannot withstand summary judgment by relying solely on his own self-serving allegations unsupported by any corroborating evidence.") (citation omitted).

Additionally, Plaintiff alleges that "another car" hit him before he was placed in handcuffs. ECF No. 1 at 4. Even assuming these facts to be true, there is no record evidence showing that Defendant was involved because, according to Reese's dashboard camera footage, Plaintiff was on the ground resisting arrest when Defendant arrived at the scene in his car. *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (stating that a plaintiff must plead facts demonstrating that a defendant's own, individual actions violated the Constitution); *Bellamy v. Dewitt*, C/A No. 4:19-1673-RBH-KDW, 2020 WL 3441484, at *5 (D.S.C. June 4, 2020) (finding the plaintiff's claim for excessive force against the defendant fails because there was no evidence showing that the defendant was personally involved in the alleged deprivation of the plaintiff's constitutional rights as required by § 1983), *R&R adopted by* C/A No. 4:19-cv-01673-RBH, 2020 WL 3440861 (D.S.C. June 23, 2020). Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's claim of excessive force arising from the alleged use of a patrol car should be granted.

***Holding Plaintiff's Legs***

Defendant argues the force used to detain Plaintiff was reasonable because Plaintiff posed a threat to officers and sustained no significant injuries from Defendant's use of force. ECF No. 25-1 at 10.

While Plaintiff does not directly allege that Defendant used excessive force in effecting his arrest, the Court nevertheless considers the *Graham* factors in determining whether Defendant's decision to hold Plaintiff's legs while other deputies handcuffed him was objectively reasonable under the circumstances. *See Johnson v. Johnson*, C/A No. 5:20-cv-1664-SAL-KDW, 2022 WL

4163050, at *8 (D.S.C. July 11, 2022) (examining whether the amount of force used was proportionate to the force needed to arrest the plaintiff under the *Graham* factors), *R&R adopted by* C/A No. 4:20-cv-1664-SAL, 2022 WL 3224669 (D.S.C. Aug. 10, 2022), *aff'd*, No. 22-7016, 2023 WL 334418 (4th Cir. Jan. 20, 2023).

Turning to the first *Graham* factor, Plaintiff was arrested after shoplifting items, threatening a Food Lion employee with a knife, and fleeing from police on a bicycle, which resulted in charges for shoplifting, resisting arrest, first-degree assault and battery, and possession of less than one gram of methamphetamine or cocaine. Because these offenses involved a threat of violence and posed a serious risk to the Food Lion employee, Defendant, and other responding deputies, the first *Graham* factor weighs in favor of Defendant. *See Est. of Armstrong ex rel. Armstrong v. Vill. of Pinehurst*, 810 F.3d 892, 900 (4th Cir. 2016) (providing that the first *Graham* factor is intended as a proxy for determining whether an officer had any reason to believe that the individual was potentially dangerous); *Wesley v. City of Lynchburg*, 837 F. Supp. 3d 773, 785-86 (W.D. Va. 2026) (quoting *Parker v. Gerrish*, 547 F.3d 1, 9 (1st Cir. 2008) (finding the first *Graham* factor weighed in favor of the police officer because "[o]ffenses like 'robbery or assault' pose a 'rise of danger to the arresting officer'")).

The remaining *Graham* factors also weigh in Defendant's favor. The record evidence demonstrates that Plaintiff posed an immediate threat to Defendant and the other deputies, evaded arrest by fleeing on a bicycle, and actively resisted arrest. When Defendant and Paulsson encountered Plaintiff in the parking lot near a Taco Bell, Plaintiff ignored the commands to stop and fled on a bicycle. After Campbell subsequently took Plaintiff to the ground, Plaintiff repeatedly ignored the deputies' commands to place his hands behind his back and stop reaching. Importantly, these events occurred while Defendant and other deputies knew that Plaintiff was

armed with a knife. *See Cansler v. Hanks*, 777 F. App'x 627, 638 (4th Cir. 2019) (noting that whether the defendant actually possessed a weapon is "a fact that could weigh heavily in the objective reasonableness assessment").

Moreover, despite Plaintiff's claims that he was unable to walk following the arrest, his medical records reveal only minor injuries that could be treated by over-the-counter medication. *See Nichols*, 173 F.4th at 522 (discussing the "scope and duration of the plaintiff's injuries" when analyzing whether an officer's actions were reasonable under *Graham*).

In light of these circumstances, Defendant's decision to hold Plaintiff's legs while the other deputies restrained him was objectively reasonable. *See Jones v. Buchanan*, 325 F.3d 520, 527 (4th Cir. 2003) (quoting *Graham*, 490 U.S. at 396-97) (providing that the relevant inquiry is "whether a reasonable officer in the same circumstances would have concluded that a threat existed justifying the particular use of force"); *Dalton v. Liles*, C/A No. 5:19-cv-00083-MR, 2021 WL 3493150, at *7 (W.D.N.C. Aug. 9, 2021) ("It was reasonable to hold down a potentially armed felony suspect who had repeatedly attempted to flee from officers"); *Pegg v. Herrnberger*, 845 F.3d 112, 120 (4th Cir. 2017) (holding that an officer's decision to take a resisting arrestee to the ground and pin him so that he could be handcuffed was objectively reasonable). Accordingly, Defendant's Motion for Summary Judgment on Plaintiff's claim for excessive force based on Defendant holding Plaintiff's legs during his arrest should be granted.

**Qualified Immunity**

Defendant argues he is entitled to qualified immunity on Plaintiff's claims against him in his individual capacity. ECF No. 25-1 at 14-15.

Qualified immunity protects government officials performing discretionary functions from civil damage suits as long as the conduct in question does not "violate clearly established rights of

which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Thus, qualified immunity is lost if an official violates a constitutional or statutory right of a plaintiff that was clearly established at the time of the alleged violation such that an objectively reasonable official in the official's position would have known of the right. *Id.* To determine whether qualified immunity applies, a district court must determine whether a plaintiff has alleged the deprivation of an actual constitutional right and whether the particular right was clearly established at the time of the alleged violation. *See Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014); *Wilson v. Layne*, 526 U.S. 603, 609 (1999).

Because Plaintiff has not established that Defendant violated Plaintiff's constitutional rights, Defendant is entitled to qualified immunity on the claims against him in his individual capacity.

## CONCLUSION AND RECOMMENDATION

Based on the foregoing, the undersigned **RECOMMENDS** that Defendant's Motion for Summary Judgment (ECF No. 25) be **GRANTED**.

**IT IS SO RECOMMENDED.**

s/William S. Brown
United States Magistrate Judge

October 2, 2026
Greenville, South Carolina

***The attention of the parties is directed to the important notice on the following page.***

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).